UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VIOLETA DURAN,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>    Defendant. | Case No. 5:13-cv-01170 HRL<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re:  Dkt. 19, 21] |

Plaintiff Violeta Duran appeals a final decision by the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act.  The parties have filed cross-motions for summary judgment, and the matter was submitted without oral argument.[1]  Upon consideration of the moving and responding papers, and for the reasons set forth below, plaintiff's motion is granted, defendant's cross-motion is denied, and this matter is remanded for payment of benefits.

## BACKGROUND

Duran was born in 1974 and was 37 years old at the time the Administrative Law Judge (ALJ) rendered the decision under consideration here.  She completed two years of college, was certified as a nursing assistant, and last worked as a caregiver for her mother, until her mother died

---

[1] Plaintiff apparently chose not to file a reply.

in December 2007.

In October 2009, plaintiff applied for disability insurance benefits and supplemental security income, alleging disability since June 1, 2009 due to a Nissen fundoplication surgery[2] (and complications stemming from that procedure); Chronic Fatigue Syndrome (CFS); depression (grief); hiatal hernia in the stomach; stomach pain; diarrhea; nausea; vomiting; gastroparesis;[3] and hypothyroidism. (AR 177). The application was denied initially and upon reconsideration, and plaintiff requested a hearing before an ALJ.

At the hearing, plaintiff testified that she could not work due to diarrhea, CFS, dizziness, stomach pain, nausea, headaches, balance problems, and gastroparesis. Additionally, plaintiff's counsel noted that plaintiff had a fractured tailbone and a lumbar spine impairment. (AR 28, 214).

The ALJ subsequently issued a decision concluding that Duran is not disabled under the Social Security Act.

He found that plaintiff meets the insured status requirements of the Social Security Act through September 30, 2009 and that she had not engaged in substantial gainful activity since the alleged onset date, June 1, 2009. (AR 28).

He concluded that the vast majority of Duran's alleged impairments were either not supported by the medical evidence, had been resolved, or were not severe. He found that the medical evidence did not corroborate a lumbar spine impairment or a fractured tailbone. (AR 29). Additionally, he found that plaintiff's hiatal hernia was surgically resolved and that her gastritis and gastroesophageal reflux conditions have no more than minimal effect on her ability to perform basic work activities and therefore were not severe impairments. (Id.). He also concluded that plaintiff's gastroparesis, hypothyroidism, and any diagnosable mental impairment plaintiff might have are not severe. He did, however, accept plaintiff's CFS diagnosis and found that it was a severe impairment. But, he concluded that she does not have an impairment or combination of

---

[2] At the hearing, the medical expert stated that a Nissen fundoplication is a surgical procedure to the stomach to prevent reflux. (AR 81).

[3] At the hearing, the medical expert stated that someone with gastroparesis tends to get nauseated and frequently feels full if they do not keep to small meals and avoid big ones. (AR 87).

impairments listed in or medically equal to one listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (AR 30-31).

The ALJ further found that, while plaintiff was unable to perform any past relevant work, she has the residual functional capacity (RFC) to perform a modified range of sedentary work as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except that she can only occasionally climb stairs and ramps; never climb ladders, scaffolds, or ropes; frequently balance; and occasionally stoop or crawl. She can frequently perform bilateral manipulative functions and can never work around heights. She has slight limitations in responding appropriately to work pressures and changes in the work place.

(AR 31). In making that determination, the ALJ gave little weight to the opinion of Dr. Jose Montoya, the treating physician who diagnosed plaintiff's CFS and who opined that plaintiff's condition is disabling; and, the ALJ also discredited plaintiff's allegations as to the intensity, persistence and limiting effects of her symptoms to the extent they are inconsistent with the assessed RFC. (AR 32-33). Instead, the ALJ gave significant weight to the opinion of medical expert, Dr. Gerber, who testified at the hearing that plaintiff can perform sedentary work.

The ALJ also received testimony from vocational expert Thomas Linvill. Based on a hypothetical that the ALJ said "somewhat track[ed]" Dr. Montoya's opinion (AR 109),[4] Linvill testified that a person with such limitations would not be able to perform any past relevant work, that there were no transferrable skills, and that there were no other jobs she could perform. (AR 110). Based on a second hypothetical tracking Dr. Gerber's testimony, Linvill testified that such a person would be unable to perform past relevant work, and there are no transferrable skills, but that there are jobs that could be performed. The ALJ ultimately concluded that although plaintiff cannot perform past relevant work and transferrable skills are not an issue, plaintiff can perform

---

[4] The ALJ's first hypothetical attributed greater capabilities to the hypothetical claimant than Dr. Montoya did for plaintiff.

1   other jobs that exist in significant numbers in the national economy, including addresser, ampoule
2   sealer, and film touch-up inspector. (AR 34, AR 110-112).
3       The Appeals Council denied plaintiff's request for review, and the ALJ's decision became
4   the final decision of the Commissioner. Plaintiff now seeks judicial review of that decision,
5   contending that the ALJ erred in two respects. First, she argues that he erred in giving Dr.
6   Montoya's opinion little weight and instead crediting that of Dr. Gerber. Second, plaintiff
7   contends that the ALJ improperly discredited her subjective complaints.

## LEGAL STANDARD

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance---it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Drouin, 966 F.2d at 1258.

### B. Standard for Determining Disability

The Social Security Act (Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Additionally, the impairment must be so severe that a claimant is unable to do previous work, and cannot

1   "engage in any other kind of substantial gainful work which exists in the national economy,"
2   considering the claimant's age, education, and work experience. Id., § 423(d)(2)(A).
3       In determining whether a claimant has a disability within the meaning of the Act, an ALJ
4   follows a five-step analysis, 20 C.F.R. § 416.920:

5.  1. At step one, the ALJ determines whether the claimant is engaged in "substantial
6.     gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(b). If so, the claimant is not
7.     disabled. If not, the analysis proceeds to step 2.
8.  2. At step two, the ALJ must assess whether the claimant suffers from a severe
9.     "impairment or combination of impairments which significantly limits [the claimant's]
10.    physical or mental ability to do basic work activities." Id. at §§ 404.1520(a)(4)(ii),
11.    416.920(c). If not, the claimant is not disabled. If so, the evaluation proceeds to step
12.    three.
13. 3. At step three, the ALJ determines whether the claimant's impairments or combination
14.    of impairments meets or medically equals the requirements of the Listing of
15.    Impairments. Id., §§ 404.1520(a)(4)(iii), 416.920(d). If so, the claimant is disabled. If
16.    not, the analysis proceeds to step four.
17. 4. At step four, the ALJ determines whether the claimant has the RFC to perform past
18.    work despite her limitations. Id. §§ 404.1520(a)(4)(iv), 416.920(e), (f). If the claimant
19.    can still perform past work, then she is not disabled. If not, then the evaluation
20.    proceeds to step five.
21. 5. At the fifth and final step, the ALJ must determine whether the claimant can perform
22.    other substantial gainful work available in the economy, considering the claimant's
23.    RFC, age, education, and work experience. Id., §§ 404.1520(a)(4)(v), 416.920(g). If
24.    so, the claimant is not disabled.

25      The claimant bears the burden of proof at steps one through four; the Commissioner has
26  the burden at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001).

# DISCUSSION

### A. Dr. Montoya's Opinion

Dr. Montoya is one of Duran's treating physicians who specializes in infectious diseases. The record indicates he began treating plaintiff in 2004. (AR 92).[5] The record contains a letter dated November 30, 2010, in which Dr. Montoya states that plaintiff meets the clinical criteria for CFS as defined by the International Chronic Fatigue Syndrome Study Group and supported by the Centers for Disease Control and Prevention (CDC). (AR 490). In that letter, Dr. Montoya hypothesizes that a subset of CFS patients have a viral base for their condition; and, he notes that plaintiff tested positive for multiple viruses, including Epstein-Barr Virus, Cytomegalovirus, and Human Herpes Virus-6, which he believes substantially contribute to her condition. (Id.). He states that, until plaintiff's fatigue measurably improves, her treatment plan includes medication and limits on activities, including walking, lifting, bending, and similar physical exertion. (Id.).

On November 30, 2010, Dr. Montoya also completed a CFS impairment questionnaire in which he indicates that plaintiff's CFS symptoms began in 2004 and that they are disabling. He notes that plaintiff exhibits an array of symptoms associated with CFS, including self-reported impairment of short-term memory or concentration severe enough to cause substantial reduction in activities; sore throat; tender cervical or axillary lymph nodes; muscle pain all over her body; multiple joint pain without joint swelling or redness at her knees; headaches of a new type, pattern, or severity; unrefreshing sleep; post-exertional malaise lasting more than 24 hours; and persistent low grade fever. (AR 491-492). Dr. Montoya goes on to indicate that plaintiff's fatigue symptoms are moderately severe to severe (i.e., 8-9 on a 10-point scale); her symptoms render her unable to work an 8-hour workday in a regular competitive job; that plaintiff can sit/stand up to 1 hour/day; she can never lift or carry anything; that emotional factors contribute to the severity of plaintiff's symptoms and limitations; her illness causes forgetfulness, difficulty in processing information, and "brain 'fog,' difficulty understanding and retaining information"; that plaintiff is

---

[5] In her Disability Report, plaintiff indicated that she first saw Dr. Montoya in 2006 (AR 181). Nevertheless, at the hearing she testified that she began seeing Dr. Montoya in "2004, 2005, somewhere around there." (AR 92).

1    incapable of tolerating even low stress; and that she would have good days and bad days and likely
2    be absent from work more than 3 times per month. (AR 491-496).
3        As discussed, Dr. Steven Gerber testified at the hearing as a medical expert. He is a board-
4    certified physician in internal medicine and cardiovascular disease. Based on his review of the
5    medical evidence, Dr. Gerber stated that plaintiff is able to perform sedentary work. (AR 83).
6        In concluding that plaintiff was not disabled, the ALJ gave Dr. Montoya's opinion "very
7    little weight," and instead gave "significant weight" to that of Dr. Gerber. (AR 33). Although an
8    ALJ is not obliged to accept the opinion of a treating physician, for the reasons discussed below,
9    the court finds that he failed to give sufficient reasons for doing so in this case.
10       "By rule, the Social Security Administration favors the opinion of a treating physician over
11   non-treating physicians." Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. §
12   404.1527). Additionally, "[t]he opinions of treating physicians are given greater weight than those
13   of examining but non-treating physicians or physicians who only review the record." Benton v.
14   Barnhart, 331 F.3d 1030, 1036 (9th Cir. 2003). And, "[a]s a general rule, more weight should be
15   given to the opinion of a treating source than to the opinion of doctors who do not treat the
16   claimant." Id.
17       When evaluating medical evidence, an ALJ must give a treating physician's opinion
18   "substantial weight." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).
19   When a treating physician's opinion is not contradicted by another physician, the ALJ must
20   provide "clear and convincing" reasons for disbelieving the treating physician. Id. at 1228 n.8.
21   "When evidence in the record contradicts the opinion of a treating physician, the ALJ must present
22   'specific and legitimate reasons' for discounting the treating physician's opinion, supported by
23   substantial evidence." Id. (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).
24       Because the ALJ relied upon Dr. Gerber's opinion in discounting that of Dr. Montoya, he
25   was required to articulate "specific and legitimate" reasons, supported by substantial evidence.
26   See Bray, 554 F.3d at 1228.
27       The ALJ adopted Dr. Gerber's opinion, stating that he found it to be consistent with the
28   record as a whole. But, the ALJ did not identify what evidence, if any, contradicts Dr. Montoya's

clinical findings. Indeed, the record indicates that Dr. Montoya and Dr. Gerber simply reached different conclusions based on the same findings. At the hearing, when asked "what's going on in [plaintiff's] file physically?" Dr. Gerber identified Dr. Montoya's November 30, 2010 letter as the most important piece of evidence: "Well, the --- I think the most important factor in the file is the extensive and detailed letter from the treating physician, Dr. Montoya. . . . He does document the elements of chronic fatigue syndrome, and he does, in his letter, I think appropriately mention refraining from strenuous physical activity." (AR 83). "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" Orn, 495 F.3d at 632. In this case, Dr. Gerber did not even examine Duran and his conclusions are not based on any independent findings.

The Commissioner acknowledges that the opinions of treating physicians ordinarily are given more weight based "on the existence of an ongoing treatment relationship, which affords a greater opportunity to know and observe the patient . . .." Benton, 331 F.3d at 1036. Nevertheless, defendant argues that the ALJ properly rejected Dr. Montoya's opinion based on gaps in plaintiff's visits that he found to be inconsistent with the alleged limitations on the claimant's everyday functioning:

> Although the record reflects the claimant first visited Dr. Montoya in 2004, the record shows that in October 2009 the claimant had last seen Dr. Montoya at some time in 2008 (Exhibit 2E/6). Dr. Montoya completed the CFS questionnaire on November 30, 2010, and indicated that he had last seen the claimant in June 2010, or at least five months prior.

(AR 33, 181, 490-532). But it is not clear why the timing of these visits is inconsistent with accepted medical practice for the type of treatment or evaluation required for plaintiff's CFS. Treatment records indicate that it was around 2008 and into 2009 that plaintiff sought treatment from multiple physicians for various symptoms, some of which she reported were getting worse over time---e.g., sore throat, body aches, "feeling increasingly more tired as time goes on," persistent and chronic fatigue, and abdominal pain off and on for the last 10 years (with symptoms getting worse). (AR 223, 290, 296, 497, 499, 541, 565, 576, 578). As discussed above, it was not

until 2009 that plaintiff claims her symptoms became debilitating. And, in any event, the purported gaps in plaintiff's visits to Dr. Montoya are not legitimate reasons for giving greater weight to the opinion of Dr. Gerber, who never examined plaintiff at all.

The Commissioner nevertheless argues that the weight given to Dr. Montoya's opinion properly was discounted because, she says, these gaps in treatment suggest that Dr. Montoya's assessment of plaintiff's capabilities was based entirely on her self-reporting of subjective complaints. As noted by the Ninth Circuit, however, that sort of argument is "ill-suited" in cases like this one because CFS is defined as a self-reported persistent or relapsing fatigue. See Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998). Moreover, the ALJ found that plaintiff has a medically determinable impairment of CFS and that it is "severe."

Finally, the Commissioner argues that the ALJ properly discounted Dr. Montoya's opinion because Dr. Montoya admitted he only tested for CFS. On the CFS questionnaire, in response to a question whether he excluded all treatable illnesses that could explain plaintiff's symptoms, Dr. Montoya states that he evaluated plaintiff only for CFS and that her "primary care physician evaluated other potential illnesses." (AR 492). Defendant correctly notes that Social Security Ruling (SSR) 99-2p provides that, "[i]n accordance with criteria established by the CDC, a physician should make a diagnosis of CFS 'only after alternative medical and psychiatric causes of chronic fatiguing illness have been excluded.'" SSR 99-2p, 1999 WL 271569 at *1 (1999) (quoting Annals of Internal Medicine, 121:953-9, 1994)). Plaintiff says that treatment notes indicate that other impairments, such as hypothyroidism and depression, were ruled out; but, based on review of plaintiff's blanket citation to a large portion of the record at AR 489-635, it is not clear to this court that actually happened. Nevertheless, the cited portion of SSR 99-2p appears to pertain only to the diagnosis of CFS---and not to Dr. Montoya's opinion as to the disabling effects of plaintiff's symptoms, whether caused by CFS or something else. Defendant acknowledges that, at step 2 of the sequential analysis, the ALJ gave plaintiff the benefit of the doubt and accepted Dr. Montoya's diagnosis by concluding that Duran suffers from CFS and that her condition is severe. The ALJ is not, as a consequence of that step 2 finding, obliged to also accept Dr. Montoya's assessment of Duran's RFC. But, having accepted Dr. Montoya's CFS diagnosis, this court does

not view the cited portion of SSR 99-2p as a legitimate reason for discounting Dr. Montoya's opinion re plaintiff's RFC and crediting Dr. Gerber's.

As to this issue, plaintiff's summary judgment motion is granted, and defendant's cross-motion is denied.

**B. The ALJ's Credibility Determination**

As discussed, the ALJ found that plaintiff has the RFC to perform a modified range of sedentary work. In so concluding, the ALJ partially discounted the claimed severity of Duran's impairments to the extent they are inconsistent with the assessed RFC. The parties dispute whether he provided specific clear and convincing reasons, supported by substantial evidence, for discrediting her subjective complaints as to her CFS.

"An ALJ is not 'required to believe every allegations of disabling pain' or other non-exertional impairment." Orn, 495 F.3d at 635 (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). In assessing subjective complaints, an ALJ conducts a two-step analysis. First, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996)). If the claimant does so, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "'only by offering specific, clear and convincing reasons for doing so.'" Id. (quoting Smolen, 80 F.3d at 1283-84). That is, the ALJ must "make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" Id. (quoting Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002)). In weighing a claimant's credibility, an ALJ may consider several factors, including (1) ordinary techniques of credibility evaluation; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. Additionally, an ALJ may also consider the observations of treating and examining physicians and other third parties concerning the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; and functional restrictions caused by the symptoms. Smolen, 80 F.3d at 1284. "Although lack of

medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). "If the ALJ's finding is supported by substantial evidence, the court 'may not engage in second-guessing.'" Tommasetti, 533 F.3d at 1039 (quoting Thomas, 278 F.3d at 959).

As discussed, the ALJ found that plaintiff has CFS and that her condition is severe. He nevertheless discredited plaintiff's subjective complaints because she stopped working in November 2007, but did not claim disability until 2009; because he found that her daily living activities did not corroborate her subjective complaints; and because he found that she was more active than she reported to her physicians. (AR 32-33). For the reasons stated below, the court finds that the ALJ based his credibility determination on insufficient grounds.

The ALJ discredited plaintiff because she stopped working in 2007, but did not claim a disabling condition until 2009. (AR 32). At the hearing, however, plaintiff explained that she stopped working in 2007 because she last worked as a caregiver for her mother who died in December 2007. (AR 88). And, as discussed above, treatment records indicate that it was around 2008 and into 2009 that plaintiff sought treatment from multiple physicians for various symptoms, some of which she reported were getting worse over time---e.g., sore throat, body aches, "feeling increasingly more tired as time goes on," persistent and chronic fatigue, and abdominal pain off and on for the last 10 years (with symptoms getting worse). (AR 223, 290, 296, 497, 499, 541, 565, 576, 578). Thus, the fact that plaintiff stopped working in 2007, but did not claim onset of disability until 2009, does not contradict the claimed severity of her subjective complaints.

Next, the ALJ discounted plaintiff's credibility, stating that "[t]he claimant is apparently able to care for her minor daughter at home without any particular assistance; this responsibility can be quite demanding both physically and emotionally." (AR 32). But, the record suggests that plaintiff cares for her daughter without help because she must. Dr. Montoya's treatment records state that Duran "continues to overdo it because she does not have a choice!" (AR 614). Moreover, the record indicates that both of plaintiff's parents are deceased and that she has a brother; but, plaintiff lives alone with her daughter and receives no assistance from her daughter's father or anyone else. (AR 32, 106, 109). When asked how she manages to do household duties,

11

Duran testified, "Do it as best I can," with help from her daughter.  (AR 109).  See, e.g., Gentle v. Barnhart, 430 F.3d 865, 867 (7th Cir. 2005) (rejecting the significance the ALJ attached to child care because the claimant "*must* take care of her children, or else abandon them to foster care or perhaps her sister, and the choice may impel her to heroic efforts.").

The ALJ's proffered reasons for discrediting plaintiff's subjective complaints based on her other daily activities are similarly unconvincing:

> Moreover, the claimant testified that she walks her daughter to school, which is a 15-20 minute walk.  A typical day involves the claimant running errands, paying bills, and taking the bus or walking.  She will do laundry, watch television, and cook dinner. She stated that she sometimes has to sit because of muscle pain and fatigue, and that she goes to the restroom about seven to eight times per day.
>
> The claimant's attorney elicited testimony from the claimant that due to dizziness, she also has to sleep for about 20 minutes per day due to drowsiness, and that she feels tired after walking her daughter to school.

(AR 32-33).  But, merely because a disability plaintiff carries on certain daily activities does not detract from her credibility as to her overall disability.  Orn, 495 F.3d at 639; see also Reddick, 157 F.3d at 722 ("Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (noting that a plaintiff need not "vegetate in a dark room" in order to be eligible for benefits).  As discussed above, plaintiff lives alone with her daughter and has no help.  The fact that she carries on these activities does not contradict her testimony that she feels fatigued afterward.  Moreover, "daily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'"  Orn, 495 F.3d at 639 (quoting Fair, 885 F.2d at 603)).  In this case, there is no evidence suggesting that Duran's activities were transferrable to a work setting or that she spent a substantial part of her day engaged in such activities.  Indeed, the ALJ found that transferability of skills is not at issue because Duran's past relevant work was unskilled.  (AR 34).

Finally, the ALJ discounted plaintiff's credibility because he found that she was more

12

active than she reported to most of her treating physicians.  As an example, he noted that "a November 2010 treatment note records that the claimant reported injuring her back 'while going down a waterslide.' (Exhibit 16F/32)."  (AR 33, 446).  But, plaintiff reported this incident to physicians in seeking medical treatment for her back injury, so it is unclear how this undermines plaintiff's subjective CFS complaints, if at all.  Moreover, as discussed above, a plaintiff should not be penalized for trying to lead a normal life.  Reddick, 157 F.3d at 722; Cooper, 815 F.2d at 561.

The court is fully aware of the deference that must be accorded to the ALJ's decision.  Even when other evidence in the record might support a contrary finding, it is not this court's role to second-guess the ALJ's determination so long as it is reached through application of the correct legal standards and is supported by substantial evidence in the record.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).  However, for the reasons discussed above, the court concludes that in this case the ALJ's decision is not supported by substantial evidence in the record.  The ALJ did not provide sufficient reasons for discounting Dr. Montoya's opinion or for discrediting plaintiff's subjective complaints re her CFS.  And, Dr. Montoya's opinion, if credited, clearly establishes Duran's inability to work.  Accordingly, the court will grant plaintiff's motion for summary judgment, deny defendant's cross-motion, and remand for payment of benefits.  See Reddick, 157 F.3d at 729 (remand for immediate payment of benefits is appropriate where disability is clear from the record).

## ORDER

Based on the foregoing, plaintiff's summary judgment motion is granted; defendant's cross-motion is denied; and the matter is remanded to the Commissioner for payment of benefits.  The clerk shall enter judgment and close the file.

SO ORDERED.

Dated:   March 31, 2015

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

5:13-cv-01170-HRL Notice has been electronically mailed to:

Alex Gene Tse    alex.tse@usdoj.gov, kathy.terry@usdoj.gov, USACAN.SSA@usdoj.gov

Donna Wade Anderson    Donna.W.Anderson@ssa.gov, ODAR.OAO.COURT.1@ssa.gov, sf.ogc.ndca@ssa.gov

Laura E Krank    laura.krank@rksslaw.com, bg_rohlfinglaw@hotmail.com, brenda.garcia@rksslaw.com